IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JASON DALE                                                                    PLAINTIFF

v.                          Civil No. 2:24-CV-02053-TLB-MEF

FORMER SHERIFF JIMMY STEPHENS;
JAIL ADMINISTRATOR JACOB SCHOOK,
Johnson County Detention Center (JCDC);
SERGEANT JOHN GRIFFITH (JCDC);
CORRECTIONAL OFFICER CHAD QUEEN (JCDC); and
CORRECTIONAL OFFICER JUSTICE CATO (JCDC)                    DEFENDANTS

## MAGISTRATE'S REPORT AND RECOMMENDATION

Plaintiff, Jason Dale, a prisoner,[1] filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. (ECF No. 9). Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Court Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation on Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (the "Summary Judgment Motion"). (ECF No. 36). Along with the Summary Judgment Motion, the Defendants filed a Brief in Support (ECF No. 37) and a Statement of Facts (ECF No. 38), including four (4) exhibits. Plaintiff filed a Response in opposition to the Defendants' Motion for Summary Judgment. (ECF No. 48). Defendants filed no reply. The Summary Judgment Motion is ripe for the Court's consideration. For the reasons outlined below, the undersigned recommends that Defendants' Motion for Summary Judgment be **GRANTED**.

---

[1] Plaintiff was an inmate at the Johnson County Detention Center ("JCDC") at the time he initiated this action. (ECF No. 1). He has since been transferred to the Arkansas Division of Correction, Tucker Unit in Tucker, Arkansas. (ECF No. 40).

1

# I.    BACKGROUND[2]

Initially, Plaintiff neither paid the filing fee associated with this action, nor did he apply to proceed *in forma pauperis* ("IFP").   Accordingly, upon initial review of Plaintiff's original complaint pursuant to 28 U.S.C. § 1915A(a), the Court ordered Plaintiff to either pay the filing fee or submit a completed IFP application, including a certified copy of his prison trust fund account statement (or the institutional equivalent) as required by law, *see* 28 U.S.C. § 1915(a)(2), by May 21, 2024, failing which this matter would be subject to dismissal.   (ECF No. 2).   That Order also noted legal and factual deficiencies with the original complaint and directed Plaintiff to submit an amended complaint addressing those deficiencies by that same date.   *Id.*   While Plaintiff submitted an Amended Complaint as ordered (ECF No. 4), and he elected to file an IFP application, his IFP application was incomplete because it did not include a certified copy of his prison trust fund account statement (ECF No. 5).   Because the IFP application included a note saying that the institution refused to sign Plaintiff's form (ECF No. 5), the Court ordered Johnson County Sheriff Tom Hughes to assist Plaintiff in completing his IFP application (ECF No. 6).   On May 24, 2024, Plaintiff submitted a completed IFP application, including the required form. (ECF No. 8).   The Court granted Plaintiff's application to proceed IFP.   (ECF No. 9).

Upon preservice review of Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915A(a), the Court recommended that Plaintiff's individual capacity claims against Defendants Jimmy Stephens, Jacob Shook,[3] John Griffith, Justice Cato, and Chad Queen for

---

[2] This section does not endeavor to describe every docket entry, only those relevant to the Court's consideration of the Defendants' Motion for Summary Judgment.

[3] Although the Amended Complaint spells Defendant Shook's last name as "Schook" (ECF No. 4), the Defendants' filings indicate the spelling is "Shook."   (*See, e.g.,* ECF No. 36).   For purposes of clarity and consistency, the Court uses the Defendants' spelling: Shook.

allegedly using excessive force against him on August 31, 2023, proceed; that all other claims be dismissed without prejudice for failure to state a plausible claim for relief; and that Sheriff Tom Hughes and Correctional Officer Emily Hanuska be terminated as defendants to this action.  (ECF No. 11).  District Judge P. K. Holmes, III, adopted these recommendations without objection. (ECF No. 17).

The Court then ordered service of the Amended Complaint on Defendants Stephens, Shook, Griffith, Queen, and Cato.  (ECF No. 24).  After Defendants Stephens, Shook, Griffith, and Queen filed their Answer to the Amended Complaint, the Court ordered them to either file a motion for summary judgment on the issue of whether Plaintiff properly exhausted his administrative remedies before initiating this action in accordance with 42 U.S.C. § 1997e(a) by October 18, 2024, or promptly file a notice stating that they did not intend to pursue failure to exhaust as an affirmative defense.  (ECF No. 31).  On October 17, 2024, Defendant Cato filed his Answer to the Amended Complaint.  (ECF No. 35).  On October 18, 2024, Defendants Jacob Shook, Chad Queen, John Griffin, Justice Cato, and Jimmy Stephens filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies, arguing that Plaintiff did not submit any grievance in accordance with the JCDC grievance procedure regarding his claim that the Defendants used excessive force against him on August 31, 2023.  (ECF No. 36).  In response, Plaintiff contends that he submitted grievances "to the best of his limited ability," that someone changed some of his grievances from "grievances" to "requests," and that some of his grievances are "missing."   (ECF No. 48).

## II.    LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Ward v. Olson*, 939 F. Supp. 2d 956, 961 (D. Minn. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material only when its resolution would affect the outcome of a case. *Anderson*, 477 U.S. at 248.

Further, the moving party bears the initial burden of identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001). In response, the non-moving party "may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). In considering a summary judgment motion, the Court views all the evidence and inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

## III.    SUMMARY OF THE FACTS

The following facts are not in dispute: Plaintiff was incarcerated at the JCDC from May 19, 2023, through June 4, 2024. (ECF No. 38-1, p. 1). The JCDC Inmate Handbook ("Handbook") contains a provision on the "request/grievance procedure." (ECF No. 38-4, p. 2). That provision states:

> REQUEST/GRIEVANCE PROCEDURE: A request for anything out of the ordinary will be addressed on a Request/Grievance Form. The assigned unit has a kiosk where requests/grievances can be submitted. Inmate grievances should be concise, limited to the space provided on the form on the kiosk, and should refer to only one issue. Grievances or requests presented containing multiple issues will not be addressed and will be returned without action. *A grievance is appropriate if an offender believes his or her rights have been violated.*

*Id.* (emphasis added).

During Plaintiff's incarceration at the JCDC, he submitted several requests and grievances on the JCDC kiosk.   *See* (ECF No. 38-2, ECF No. 38-3).

On August 31, 2023, Plaintiff submitted an inmate request, saying, in full

> IM REQUESTING PROTECTIVE CUSTODY PLEASE, I feel that my life is in danger if moved from E pod into any other pod here at this detension center, ive been forced by inmates in other pods to pay them money just to keep away from being beaten up or hurt real bad in the past. I feal safer here and less scared for my life,more at piece than anyplace ive been in here, please keep me in E-pod under protective custody status i fear for my life and well being if moved into normal population where everyones already talking that what ever place i get moved to from here how much ill be made to pay them to stay safe. PLEASE HELP ME IM TIRED OF BEING STRONG ARMED FOR MY MONEY AND TO NOT BE HURT BY PEOPLE ANY MORE. PLEASE PLEASE and thank you

(ECF No. 38-3, p. 104).   Kathy Ezell "rejected" this inmate request as "unfounded."   *Id.*

The parties dispute whether Plaintiff submitted a grievance in accordance with the JCDC grievance procedure regarding his claim that the Defendants used excessive force against him on August 31, 2023.   In support of their Motion for Summary Judgment, Defendants submitted over 300 pages of Plaintiff's kiosk submissions and assert that none properly exhaust the JCDC grievance procedure regarding this claim.   (ECF No. 38-1).   In response to Defendants' Motion for Summary Judgment, Plaintiff submitted an affidavit asserting that someone changed some of his grievances to requests and that some of his grievances are missing.   (ECF No. 48).

## IV.     ANALYSIS

When a prisoner initiates a civil action over the conditions of his confinement, 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act (PLRA) requires the prisoner to exhaust his administrative remedies before filing suit.   42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731,

5

733 (2001) (explaining that 42 U.S.C. § 1997e(a) "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions."). This requirement is mandatory. *See Chelette v. Harris*, 229 F.3d 684, 687 (8th Cir. 2000).

In determining whether a prisoner has first exhausted his administrative remedies, courts look to the prison's grievance procedure. *Abdul-Muhammad v. Kempker*, 486 F.3d 444, 446 (8th Cir. 2007) (citing *Jones v. Bock*, 549 U.S. 199 (2007)). "[T]he degree of specificity required in a prison grievance 'will vary from system to system and claim to claim, but it is the prison's *requirements*, and not that PLRA, that define the boundaries of proper exhaustion.'" *Id.* (quoting *Jones*, 549 U.S. at 218)) (emphasis added). Thus, to satisfy Section 1997e(a)'s exhaustion requirement, inmates must file grievances in accordance with the institution's policies and procedures. *Washington v. Uner*, 273 F. App'x 575, 577 (8th Cir. 2008) (citing *Woodford v. Ngo*, 548 U.S. 81, 91-92 (2006)).

### A. Plaintiff Did Not Satisfy the JCDC Grievance Procedure

The requirements of the JCDC grievance procedure are minimal, providing that "inmate grievances should be concise, limited to the space provided on the form on the kiosk, and should refer to only one issue," and that "[a] grievance is appropriate if an offender believes his or her rights have been violated." (ECF No. 38-4, p. 2). Thus, to satisfy the JCDC grievance procedure, an inmate who believes his rights have been violated is required to submit a grievance on the kiosk referring to the issue using the space provided.

Here, the only remaining claim is that the Defendants used excessive force against Plaintiff on August 31, 2023. (ECF Nos. 11, 17). To satisfy the JCDC grievance procedure with respect to this claim, therefore, would require Plaintiff to submit a grievance on the issue of excessive

force — the JCDC requires nothing more, no description of the events giving rise to the grievance, nor even any identification of the individuals involved. Defendants assert that the summary judgment record shows that Plaintiff submitted no such grievance. The undersigned agrees.

The Defendants point to one inmate request Plaintiff submitted on the kiosk on August 31, 2023, in which Plaintiff requests to remain in protective custody. (ECF No. 38-3, p. 104). Plaintiff argues that any rational person would construe this grievance as exhausting JCDC's administrative remedies. (ECF No. 48, p. 2). He also believes that this kiosk entry was changed from a "grievance" to a "request." *Id.* The Court is not persuaded. Regardless of its label, this kiosk entry solely concerns Plaintiff's request to remain in protective custody and the basis for his request, namely, that he has felt coerced into giving money to other inmates to avoid being assaulted and believes that if he were to return to general population, he would be subject to similar threats. (ECF No. 38-3, p. 104). But the kiosk entry makes no mention of being subjected to excessive force by JCDC officials. *Id.* This kiosk entry, therefore, does not satisfy the JCDC grievance procedure with respect to Plaintiff's excessive force claim against the Defendants.

For his part, Plaintiff makes two arguments: (1) he points to three additional kiosk entries (ECF No. 38-2, pp. 72, 91, and 92) for this Court to consider in determining whether a material fact dispute precludes summary judgment; and (2) he asserts, under penalty of perjury, that "some of [his] grievances [are] missing." (ECF No. 48).

The Court starts with the kiosk entries identified by Plaintiff. First, Plaintiff claims that his May 7, 2024, kiosk entry was labeled a "grievance," and then that label was changed to "medical request." (ECF No. 48). That kiosk entry provides: "I don't want to see the jail doctor I want to go to the Emergency room." (ECF No. 38-2, p. 72). Setting aside its label, this kiosk

7

entry does not mention the issue of excessive force, so it does not satisfy the JCDC grievance procedure with respect to Plaintiff's claim.    Moreover, to the extent Plaintiff asserts that this kiosk entry proves his point that someone would go in and change the labels of his kiosk submissions, this point would only be relevant if Plaintiff could identify some kiosk entry—regardless of its label—that mentions that excessive force was used against him.    As detailed below, Plaintiff has not done so.    Accordingly, Plaintiff's May 7, 2024, kiosk entry fails to establish a disputed material fact that would preclude summary judgment on the issue of exhaustion.

Second, Plaintiff asks this Court to consider the kiosk entries found at ECF No. 38-2, pp. 91-92.    (ECF No. 48).    These kiosk entries read:

> I need out of here take me isolation I am tired of in G pod I need out

(ECF No. 38-2, p. 92).

> I am fileing a 1983 form for not protecting.

(*Id.* at p. 91).

Plaintiff argues these kiosk entries show that he needed to be moved from his housing unit and establishes that he exhausted his administrative remedies.    (ECF No. 48).    By way of providing some context, Plaintiff says that after he was moved to E-pod, which is protective custody, he put in a grievance asking to remain in protective custody and not be returned to G-pod. (ECF No. 48).    Plaintiff claims that after he made the request, Defendants Cato, Queen, and Griffin were involved in "dragging" him back to his cell in G-pod.    *Id*.    The fundamental problem with this argument, however, is that the kiosk entries, themselves, do not address the claim at issue here, namely, the alleged use of excessive force by the Defendants in transferring him to a different housing unit.    Rather, on their face, these kiosk entries concern the condition of G-pod and a

failure to protect—neither of which addresses a claim against JCDC officials for use of excessive force. Accordingly, neither of these kiosk submissions satisfies the JCDC grievance procedure with respect to Plaintiff's excessive force claim.

Further, Plaintiff points to no other kiosk submission in the record as establishing a genuine issue of material fact regarding his exhaustion of administrative remedies. The undersigned, therefore, finds that no reasonable juror could conclude that Plaintiff's kiosk submissions satisfied the JCDC grievance policy with respect to his claim that the Defendants used excessive force against him on August 31, 2023. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("It was not the District Court's responsibility to sift through the record to see if, perhaps, there was an issue of fact.") (citing *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments.")).

This conclusion serves as a natural segue to Plaintiff's final argument that "some grievances [are] missing" from the summary judgment record. (ECF No. 48, p. 5). Put differently, Plaintiff asks the Court to conclude that a disputed material fact exists regarding whether he exhausted his administrative remedies because he claims, under penalty of perjury, that some of his grievances are missing from the record. In assessing a motion for summary judgment, however, "courts do not accept unreasonable inferences or sheer speculation as fact." *Davis v. City of Little Rock*, 122 F.4th 326, 332 (8th Cir. 2024) (citation omitted). Indeed, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with *specific* facts showing that there is a genuine issue for trial." *Id.* (citation omitted) (emphasis added). Plaintiff's sworn assertion that grievances are missing is

wholly conclusory—he offers no factual detail regarding these supposedly missing grievances, such as when he submitted them or what they contained.   In support of summary judgment, the Defendants filed over 300 pages of kiosk entries Plaintiff submitted over the year he was detained at the JCDC.   Plaintiff has offered no evidence that JCDC recordkeeping is incomplete or unreliable.   Accordingly, Plaintiff's assertion that "some grievances" are "missing" amounts to nothing more than sheer speculation and thus falls short of creating a genuine issue of material fact for trial.   In short, there is no genuine issue of material fact that Plaintiff failed to exhaust his administrative remedies by failing to submit a grievance on the JCDC kiosk system on the issue of excessive force—the only remaining claim in this action.

### B.    The JCDC Grievance Procedure was "Available"

Having concluded that Plaintiff failed to exhaust his administrative remedies, however, does not end the Court's exhaustion analysis.   "Under [42 U.S.C. § 1997e(a)], the exhaustion requirement hinges on the 'availability' of administrative remedies.   An inmate must exhaust available remedies, but need not exhaust unavailable ones."   *Smith v. Andrews*, 75 F.4th 805, 808-09 (8th Cir. 2023) (internal omitted) (cleaned up).   "It follows that administrative remedies are 'unavailable' to an inmate under [section 1997e(a)] when (1) the inmate was unable to file a timely grievance due to physical or mental incapacity; and (2) the administrative system's rules do not accommodate the condition by allowing a late filing."   *Id.* at 809 (citations omitted) (listing cases). Further, the Supreme Court has recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643 (2016).   First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end –

10

with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Here, it is undisputed that JCDC's grievance procedure does not require inmates to submit a grievance within a certain date from the events giving rise to the grievance. (ECF No. 38-4). Plaintiff asserts no facts establishing that this procedure was not available to him or otherwise unavailable for use due to system or equipment malfunction. (ECF No. 48). Nor are there any facts in the record to suggest that the grievance procedure operated as an effective dead-end. Rather, several of Plaintiff's grievances show staff responding to Plaintiff's concerns. (*See, e.g.*, ECF Nos. 38-2, 38-3). Accordingly, no reasonable juror could conclude that the JCDC grievance procedure was "unavailable" to Plaintiff within the meaning of 42 U.S.C. § 1997e(a).

Defendants' Motion for Summary Judgment (ECF No. 36) should, therefore, be **GRANTED**.

## V.    CONCLUSION

For the reasons and upon the authorities discussed above, it is RECOMMENDED that the Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (ECF No. 36) be **GRANTED** and that this case be **DISMISSED WITHOUT PREJUDICE**.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties**

**are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

      **STATUS OF REFERRAL: No longer referred.**

DATED this 14th day of March 2025.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE